The next case on the agenda is number 11, and the number is 125441 State Farm Mutual Automobile Insurance Company v. Kent Elmore. Mr. Podesky. Yes, Your Honor. Please proceed. May it please the Court, my name is Mike Podesky. I am representing the appellant, State Farm, in this case. Your Honor, here the appellate court made a fundamental error in insurance policy construction. As this court has held for many years in many cases, a court's primary objective is to give effect to the intentions of the parties as expressed in their agreement. Well, that's not what happened here, Your Honors. What was the intent behind the insurance policy at issue? Well, the policy under consideration is an automobile policy. Sheldon Elmore, the father of Kent, purchased an automobile policy from State Farm, and it covered a Ford truck. So like every other auto policy that's involved, the carrier's going to want to know who's the resident drivers at the home, how many miles. Typically, the drivers will drive in a year, go through all of these things in underwriting, and then issue a policy to cover a specific vehicle. Because as we know in Illinois, insurance follows the vehicle. And that's what was done. Excuse me. So Sheldon Elmore paid premiums for this policy, and State Farm issued a policy and accepted premiums to insure a Ford truck. And that's what the coverage was issued for, a Ford truck. That's what was given to him, and that's what he paid premiums for. So but what happened in this tragic accident was an incident with a farm implement. The complaint is located in the record at C215. That's where the complaint's located, all the allegations of negligence there. The negligence that's alleged against Sheldon Elmore has absolutely nothing to do with the truck, the insured vehicle. The allegations have to do with the grain auger which caused the accident. What was alleged in the complaint was that Sheldon had turned on the auger without warning, removed the shield from the auger, failed to warn that the shield had been removed, and failed to equip the auger with an appropriate shield. These are all allegations of negligence in maintenance or modification of a farm implement. Nothing to do with a motor vehicle. Now, the grain auger is a specialized piece of farm equipment. I know a number of the Court is familiar with farming. There's some photos I'm going to mention later on in the argument. But basically what the auger is is a long tube. It has a spiral screw in the tube, and it's designed to move grain from one elevation to another. Typically, the grain will be moved into a grain bin. In this instance, it was moving into a transport truck. But that's basically what the only thing the grain auger will do. Again, it's a specialized piece of farming equipment. And that's how the accident occurred, because there was no guarding on the chute at the bottom of the grain auger. The fundamental error that the appellate court did in this case, Your Honor, is basically transformed an auto policy into a farm liability policy. The state farm policy at issue, which, again, is an automobile policy, was never meant to cover this type of an accident. The policy contained exclusions. The key exclusion that's at issue here today is the mechanical device exclusion, and that is found in the record at C190. There's a separate exclusion at C199 specifically states that there is no coverage for bodily injury arising out of the operation of any farm implement. Now, with the Fifth District, and we brought this up to the appellate court, and the Fifth District said, well, you know, that would be an absurd result to say there's no coverage here, because this truck was involved in the farm operation. It was unloading grain. Unloading is something that the truck will do, you know, to enforce this exclusion. And they also said it was too broad. Well, that would mean that the only way there would be coverage here would be if you're going to unload the grain with a hand truck or a wheelbarrow. So — Help us understand the meaning of other than a hand truck in the policy exclusion. How does that determine the meaning of mechanical device? Right. It's other than a hand truck. Basically, a hand truck is something that's been interpreted by other courts. I don't think it's been interpreted in Illinois, but basically it's something that's not the mechanical device, so it would be like a wheelbarrow, something that's done manually. It would be a small contrivance that does not involve a machinery, does not involve — one court distinguished the hand truck from a pallet jack, because the pallet jack could handle up to about 5,000 pounds and had a cylinder. So it's something that basically can be sort of manhandled by a farm worker or anyone, really, that handles a wheelbarrow, something that is not so much a machine, it's not powered by any source, it's powered by an individual, powered by a human person that's using it, something small. But again, getting back to what the Fifth District said, well, you know, that's an absurd result here because there would just be no coverage at all for this accident. Well, in all due respect to the appellate court, Your Honors, there's nothing absurd about having different insurance policies covering different risks, because that's kind of how insurance operates. Most people that have a home, they have homeowner's insurance. Again, we're talking about liability coverage, so that would cover for if someone had a slip and fall, maybe fell off a ladder, someone had a dog, the dog bit somebody, they brought a liability claim. That's a homeowner's policy. Automobile policy. Someone's driving their car. Everyone in Illinois has to have auto coverage. If you go through a stop sign, you hurt somebody, there's going to be coverage for an automobile policy. There's also something called a farm liability policy. That covers farm accidents and it covers farm equipment, such as a combine, tractor, a grain auger, or a brush hog. These are all sort of mutually exclusive coverages, by the way, Your Honors. In your homeowner's policy, that's not going to cover if you have an auto accident. If an auto accident occurred, there's not going to be coverage under the homeowner's policy because there are different policies insuring different risks. Just like here in this situation, if you have a motor vehicle designed to be operated on roads, is required to be licensed on the motor vehicle code, that's not going to be covered by a farm liability policy. Again, different policies cover different risks. In this case, counsel, is it incumbent upon the court to, A, determine whether the exclusion is ambiguous, and B, what the meaning of the mechanical device is? Yeah, that's a question of law for the court, Your Honor. And the Fifth District said it was ambiguous, and I'll get to that in a minute, but that is a question of law. The point I'm trying to make here at this point of the argument, Your Honors, is that a farm implement is not covered by a motor vehicle on auto policy. For example, a combine, that's not covered under an auto policy. A tractor is not covered under an auto policy. Those items would be covered under the farm liability policy. That's what the farm liability policy is designed to do. Just as the truck, if there was an accident with this insured Ford truck, that wouldn't be covered under the farm liability policy. Again, different policies cover different risks. That doesn't mean it's an absurd result to say there's no coverage for this accident with this grain auger, excuse me, that was negligently maintained because the screen was off. That doesn't mean that because there's no coverage under an auto policy, that's an absurd result. The result of that is just that's the wrong policy for this particular accident because the accident involves a farm implement. And that's just the fact of what happened here, Judge, Your Honors. So we come to the mechanical device exclusion and this issue of ambiguity. This is, as far as I can tell and counsel can tell, I think, would probably agree with me, this is a case of first impression in Illinois. We cited multiple cases from other states who have interpreted the identical policy language. They found that the language is unambiguous and precluded coverage. And I cited those in the brief. Incidentally, in the dissent, Justice Overstreet found the language unambiguous and precluded coverage as well. But the Fifth District distinguished those cases. And the basis of distinguishing the cases was that the Court said, well, these other cases featured self-powered or motorized devices like a forklift, a front loader. So those are different. What we have here, you know, this grain auger, that's not self-powered or it's not motorized. So those cases don't apply here. This is something that, you know, you have to have a PTO shaft to operate the grain auger. Well, that's an — and, again, I'll do respect to the appellate court, that's another error here, Your Honors. The error is that the appellate court is requiring the self-powered language to apply if the exclusion is going to apply. There's no self-powered requirement in the State Farm policy. The policy doesn't say that the mechanical device has to be self-powered or under its own power. That's not there. All it says is if it's a mechanical device and it's moving property, that the exclusion would apply. Counsel, is your position the mechanical device in this case is the auger itself? Yes. Or is it the auger attached to the tractor, which is powering it? It's the auger. It's the auger, Your Honor. Yes. So, again, the fact that the mechanical device is not defined doesn't make it ambiguous. It just means you use a dictionary definition. Webster's Dictionary and some other foreign authority has done the same thing, and we cited that in the brief. But mechanical means related to machinery or tools. Device means it's a piece of equipment designed to serve a special purpose. And like I mentioned before, there's some photographs. If the courts, if any of the justices are interested in looking at this, if you're not Elmore's deposition in the underlying case. And so you've got a picture of the grain auger. These are exemplars. They're not the exact equipment involved, but they're very similar. So this is at E54 in the record. It shows the auger. It's a long tube. Again, it moves grain from a lower level to a higher level, typically going into the grain bin. Another example kind of shows sort of how the accident would have happened. And here's the chute at the bottom with the auger. You can kind of see the screw blade at the bottom there that moves. The screw operates. It's powered by the PTO shaft from the tractor that operates the screw. The grain comes in from the truck. The gate is opened. The grain comes down, goes into the chute, up the auger, and then it's deposited into the transport truck. And then they're going to take it off to the grain elevator in town. And that's at E60, if you want to take a look at that photo. And then another one that shows the equipment here. This is at E61. Again, you have the hopper here, and you have the back end, the gate of the truck. Grain would come out. Again, you could see the mechanism involved there. So, again, these are photographs, exemplar photographs that kind of show what this is. So, you know, the question is, is the grain auger a mechanical device, or is it not a mechanical device? Well, what would a reasonable person believe? Well, we know one thing. I think we can agree it's a specialized piece of equipment to be used on a farm. It's a device. It's used to serve a specific purpose, a special purpose, and that's to move grain. That's the only purpose of the auger. Is it mechanical? Well, it's powered by a PTO shaft from a tractor. And, again, there's a lot of torque involved, a lot of power from the tractor, and it drives the screw. And when the screw drives, the grain is placed in the bottom of the auger, and it goes up. So it's definitely, I would say it's definitely mechanical. It's a mechanical device that's used on a farm. Okay? And, again, what we get to in this case, Your Honor, is a negligent maintenance of some farm equipment as the cause of this tragic accident. How is that covered under a motor vehicle policy for a truck? That's the problem in the case here. It's certainly, again, that the grain auger is related to machinery and is designed to serve a specific purpose. Justice Overstreet mentioned in his dissent, made a good observation, I think, that this really does violate freedom of contract. The coverage was basically reformed here by the appellate court. Again, we go from a motor vehicle policy for a truck to applying liability coverage from that policy onto a farm implement. Okay? Again, when we talk about auto policy, well, you know, you're going to pay one premium if you're driving a 2002 Ford truck. There will be another premium, a different premium if it's some kind of a sports car, if you've got teenage kids living at your house. All of this comes into play because the coverage that's issued for a motor vehicle is specific to that particular motor vehicle. That's what's being insured. If the vehicle is 10 years old, the collision coverage is going to be less expensive than a brand-new car, for example. All these factors go into the premium that the insured pays when they buy motor vehicle coverage because, again, the coverage is specific to the vehicle. It's auto coverage, and it's heavily regulated, and there's plenty of cases here in Illinois on that. It is not farm liability coverage. An auto policy covers an automobile. It doesn't cover farm implements. But that's what the Fifth District did. They transferred the coverage from the auto policy onto basically making it a farm liability policy. They said that the exclusion here, while it's broadly worded, it's way too broadly worded. It can't be enforceable. But the point I'm trying to make, Your Honors, is that auto carriers have a right to restrict the coverage to what's insured, and what is insured is the motor vehicle. Auto carrier is not insuring a tractor. It's not insuring a combine. It's not insuring a brush hog. That's why the policy says what it says. That's why there's a mechanical device exclusion, a separate exclusion about equipment being or a separate exclusion for farm implements because, again, it's an auto policy. It's not a farm liability policy. It's not a comprehensive general liability policy either that has the really broad coverage. So what really here is a violation of freedom of contract because the premiums that were charged to Sheldon Elmore were for the truck. They weren't premiums to cover all of his farm equipment. So if there's no other questions, I would just ask the Court to reverse the appellate court and affirm the trial court. Thank you.  Mr. Custer. May it please the Court. Counsel, my name is Chris Custer, and along with my co-counsel, Kara Wade, I have the privilege, we have the privilege of representing Kent Elmore in this case. Kent is here. I understand he drove his three-wheel motorcycle from Eppingham County today. It was a brisk ride. Also, as a proud father, I'm happy to say that my son, Andrew Custer, the Clay County State's attorney, is here with us. And it's a privilege and an honor for all of us to be in front of you this morning. Counsel suggests in his brief and in his argument that there's no coverage because it's just a car policy. Just like a homeowner's policy does not cover a vehicle in a garage, counsel suggests that the Elmore policy in this case does not cover farm accidents involving loading and unloading of grain. To the contrary, my client is not attempting to procure homeowners' coverage through a vehicle policy. We are not trying to jam a square peg in a round hole. It's not necessary in this case. It's not necessary in this case, and here's why. We all know that when we try to determine the intention of parties to a contract, and this is just an insurance contract, we look at the terms of the policy. So what are the terms of this policy? Is there liability coverage for a farm accident arising out of the loading and unloading of corn in this covered vehicle? We look at the declarations page, first of all, the very first page of an insurance policy. A lot of good information there. In that particular declaration page of that policy, it says we are insuring this international truck. This is not a random auto policy where it's covering the family minivan. It's insuring a grain international truck. And beyond that, and as further evidence that there is indeed coverage in this particular case, we look at the declarations and the endorsements on the policy, which are listed at the bottom of that declaration page, which is part of the policy. Sheldon Elmore negotiated and paid for those endorsements. At the bottom of that declaration page, on page 148 of the record, there's endorsement 6018GG. That was added to include commercial vehicle coverage. If you also look at the bottom of that declaration page, Sheldon Elmore paid for, negotiated, and received under this contract endorsement 6055ZZ. And on the declaration page, it says these words, farm truck, farm use. So these items were specifically added to this policy. These endorsements become part of the policy. And that's how we determine that what was the intention of the parties to this contract. Clearly, we're talking about moving grain. We're talking about grain trucks and farm, farming operation. Are you saying, then, that this was a farm policy? This was an auto policy. But as this Court is well aware, similar to what you did in the Schultz case, we established a number of years ago, this Court, auto policies cover more than just driving. Auto policies cover more than just driving. They coverage loading and unloading. They covered use of this truck. So it can be more than just driving. It is absolutely a vehicle policy, but because it covers use, loading, unloading, this is a covered event under the policy. So we don't need to address or worry about whether that exclusion is ambiguous or unambiguous? Unfortunately, we absolutely have to address that. But I think, as counsel said, and as the appellate court on page 8 of its opinion, I think, appropriately pointed out, in the trial court proceeding, counsel Badesky appropriately and candidly advised the trial court, yes, there is coverage for this farm accident event that caused these tragic results in this policy. However, however, now we get to you, Justice Garment, we have an exclusion that excludes coverage in this case. So we all know when we have a policy that purports to provide coverage in one part of the policy and then attempts to take away what they gave in the original part of the policy, we have to go through a process to determine whether or not that exclusion is appropriate or not. And what is that process? Well, the process is it is the burden of the company to show that it is clear and free from doubt. Specifically, Illinois law says where an exclusionary clause is relied upon to deny coverage, its applicability must be clear and free from doubt. And, again, it's their burden to prove that point. Now, let's go to this, what appears to be a rather old and archaic mechanical device exclusion. It's not clear. It's not free from doubt. As an illustration of why it's not clear, free from doubt, we had a very competent trial judge and we had three very wise justices not be able to figure out whether this is what it means. I mean, just to read it, the movement of property by means of a mechanical device other than a hand truck that is not attached to the vehicle described in the above. That is not clear. That is not free from doubt. What is a hand truck? We had to go to the dictionary to determine what that is. It's a wheelbarrow. So if you read that, it's a wheelbarrow. Are they trying to say that, listen, we're going to provide coverage for this unloading of grain in this huge grain truck in this farm operation only when you use a wheelbarrow? Why would you be using a wheelbarrow, a small wheelbarrow, to unload grain in a large grain truck? Again, it really doesn't make sense. And that's why we're here. We, as policy owners, we should not have to look to foreign jurisdictions to determine what state farm meant when it wrote its policy. We should not have to go from Webster's to dictionary.com to determine what this actually meant. We have a gentleman farmer who is an absolute gentleman farmer who specifically said, I want this grain truck covered, and I also want this endorsement showing farm use and farm truck and commercial use. And, again, if we apply the principles of Schultz saying, oh, wait a minute, insurance coverage for vehicles is a lot more than just driving. It's use. We talk about completed operation doctrine that covers all those events that occur from the start of the process of the loading to the end of the unloading. So the appellant over here distinguished the other cases of a mechanical device on the basis of this was not a powered mechanical device. But in looking at the exclusion that you just referred to, if it says movement of property by means of a mechanical device other than a hand truck, that means a hand truck is a mechanical device, I take it, which is not powered. That's true. But, again, I think the broader point, Justice Carmier, is that it's not clear. I think you could line up 100 folks, both well-educated in the law and farmers, and no one would agree upon what that means. State Farm has at least two pages of definitions in its policy. They could have and certainly should have applied a definition to what they mean in this case. They did not do it. They may have done it by now, but clearly it's not well written. It's archaic, and it's absolutely not clear or free from doubt. Should it factor into our discussion or consideration that there was a farm liability policy? No, I don't believe it should. It's been mentioned in the briefs, and I will candidly say that Mr. Elmore did receive funds from another policy, specifically $1.9 million in funds in a settlement. I'm not concerned about the settlement, but the fact that there was a farm liability policy in addition to a farm truck policy, does that matter? Not really, Your Honor. It does not. But anyway, and I think it's also important to note that if you affirm the appellate court, you are not going to upend the insurance industry. You can see by this case, we all agree it's a case of first impression. No appellate court has had to grapple with this archaic exclusion before now, so it's not one that's been litigated very often. State Farm probably has already included the definition, so we're not going to upend the insurance industry by affirming this opinion. While it is incredibly important, incredibly important to Kent Elmore in this case, it's not going to, again, change the landscape of the insurance industry at all. If nothing else, it should serve as a reminder that when insurance carriers and companies and attorneys draft their policies, they should be more clear, and when necessary, they should include a definition. And that's why this Court and all the other appellate courts have said if there's any doubt, if there's any ambiguity, we're going to construe the policy liberally in favor of coverage because, you know what, you drafted this policy. Sheldon Elmore did not draft this policy. So unless there are other questions. I do have one question. Certainly. Can you just clarify for me, maybe very briefly, your argument in your briefs about this exclusion being void as against public policy because it excludes your client as a permissive user? The way I read that policy, maybe it would exclude Sheldon as an insurer also under the same facts and circumstances. I think that's really more of a side, collateral issue, not necessarily on point with regard to whether or not this policy exclusion is clear or not. But I do think from a standpoint of showing what the public policy of the courts have been with regard to we've got to err on the side of coverage if we can. If it's ambiguous, we've got to have the coverage. We've got to have definitions. But the difference between an insured versus a permissive user, I don't think that's particularly right on point with regard to this case. But I think it does illustrate and highlight the care that courts take to make sure that policyholders do receive the benefit of what they bargained for when they purchase endorsements that say farm truck, farm use, and commercial policy. Thank you very much for your time this morning. Thank you, Mr. Fung. Mr. Bedersky. Just to briefly respond, Your Honors. Justice Carmeier asked, I think, a significant question, is it does it matter that there is also a farm liability policy? It really does matter, and the reason is this. This Court issued a recent case. I think it's a couple years old now. It's called CROP. And basically what it held was that once an insurance policy is issued, the insured has the burden of looking over the policy and making sure the coverages are the appropriate coverages because the statute of limitations runs against the agent if they negligently got the wrong coverage. That statute runs immediately when the insureds obtain the policy. Now, why I say that's significant under CROP is this. If Mr. Sheldon Elmore, who counsel says bargained for this policy, if he wanted coverage for his farm implements under this automobile liability policy, he was required to contact the state farm agent and say there's a problem here because, again, he needs to look over the policy. And counsel mentioned the endorsements, and this is something that the appellate court seized on, which is this 6055ZZ farm truck. Well, when we go to the 60ZZ, that endorsement, says farm truck coverage while towing trailers and farm implements. The last paragraph talks about liability coverage, and it adds an exclusion. And the exclusion says there is no coverage for an insured for bodily injury or damage to property arising out of the operation of any farm implement. So Mr. If there was a problem, again, Mr. Elmore Sheldon was obligated to contact his insurance and his state farm agent and say I want this policy changed. There's a problem. Well, there wasn't a problem. And the reason why there wasn't a problem is because he did have a farm liability policy, and the farm liability policy did cover this accident involving Kent Elmore. Okay? So that is significant because there was no expectation by Sheldon Elmore that this auto policy was going to cover his farm implements. Again, that's entirely reasonable and actually makes sense under this Court's recent opinion in that crop case because he had separate policies to cover separate risks, and that's what the policies are designed to do. This argument that, well, you know, this exclusion doesn't make any sense, well, is a grain auger a mechanical device? I mean, is that, again, to a reasonable person? The point of all of this is, Your Honors, is that an auto policy covers the automobile. Yes, the truck is going to be used for some unloading, but the problem in the case is as part of that unloading operation, there's these farm implements that are being used in unloading. One possibility that could have been done here, instead of the grain auger, he could have had a front loader. Now, I don't know if a lot of farmers had this expensive piece of construction equipment, but you could have the truck could dump the grains to the grain auger or the front loader. The front loader then takes the bucket, dumps it into the transport truck. Well, if the, for example, if the front loader would have struck Kent instead of what happened here, well, is there going to be coverage under the auto policy issued to, for the truck? That's a completely different, a completely different item, a completely different piece of equipment would be a front loader. But the same principle applies. I know it's a little bit of an extreme example, but the same principle applies. The point of the exclusion is that the coverage is limited to the vehicle. It's not going to be extended onto additional equipment, farm equipment, used in this operation, because some of this farm equipment, Your Honors, is extremely dangerous. And, you know, again, the grain auger, it's got a powerful PTO attached. It's got that screw. I mean, farming can be an extremely dangerous business, and that's why there are certain coverages apply to farm implements. Other coverages apply and different policies apply to automobiles. So this notion that it's broad or vague, well, that's just something that's the point of the exclusion is used. So to make sure that unrelated equipment, or I should say all this additional equipment that might be on a farm, that's not going to be covered under the auto policy because, again, all this other equipment that could be very dangerous could hurt somebody, that's the subject of coverage for a different policy. And that's just how these policies work together. Thank you. To the contrary. Thank you. Case number 125441, State Farm Mutual Automobile Insurance Company vs. Kent Elmore, will be taken under advisement in Norris Agenda Number 11. Thank you, Mr. Budetsky and Mr. Custer, for your oral arguments.